(July 18, 1990)

■ In the Matter of THOMAS O. PANDICK, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Per Curiam. Respondent was admitted to the Bar by this court in 1973 and is employed in the office of the New York State Comptroller in the City of Albany.

In this disciplinary proceeding, petitioner Committee on Professional Standards filed a petition containing a single charge of professional misconduct arising out of respondent's actions in connection with a proceeding before the State Comptroller to determine the beneficiary of certain death

benefits. The charge, which contains four specifications, alleges, in effect, that respondent, in violation of Code of Professional Responsibility DR 1-102 (A) (4), (5), (6); DR 7-102 (A) (3), engaged in conduct prejudicial to the administration of justice and which reflected adversely on his fitness to practice law by failing to disclose to a successor Hearing Officer the existence of a recommended decision by the original Hearing Officer and by misleading and attempting to mislead the successor Hearing Officer and others. Specification 1 alleges that in July 1984, J. Clarence Herlihy, former Presiding Justice of this court, conducted a hearing to determine the beneficiary of life insurance proceeds payable under the New York State Employees' Retirement System. Justice Herlihy thereafter rendered a recommended decision in December 1984 awarding the proceeds to decedent's present wife that was sent to respondent in his capacity as counsel to the Retirement System for review. It further alleges that in February 1985, Justice Herlihy died and respondent subsequently reassigned the matter to a new Hearing Officer, Jacob Gitelman, without providing him with Justice Herlihy's recommended decision or informing him of its existence.

Specification 2 alleges that Judge Gitelman subsequently rendered a recommended decision awarding the proceeds to decedent's former wife which stated, *inter alia,* that Justice Herlihy had died without rendering a decision. It further alleges that respondent prepared and submitted findings of fact and conclusions of law to Judge Gitelman for his signature without informing him of the existence of the prior decision by Justice Herlihy. The specification further alleges that Judge Gitelman's recommended decision with findings of fact and conclusions of lawn as adopted as the final determination of the Comptroller and distributed to the parties and their attorneys, at which time respondent again failed to make known to Judge Gitelman or to the attorneys for the parties the existence of the prior decision by Justice Herlihy.

Specification 3 alleges that respondent, in connection with a CPLR article 78 proceeding brought to review the Comptroller's final determination, forwarded a copy of the underlying record to the State Attorney-General but failed to forward Justice Herlihy's recommended decision. Specification 4 alleges that in August 1985, respondent sent a letter to Judge Gitelman, the Attorney-General and the attorneys involved in the article 78 proceeding which stated, in part, that in reviewing the article 78 proceeding "it came to my attention that a decision rendered by Hearing Officer Clarence Herlihy prior to

his death had not been properly filed". The specification further alleges that this statement was untrue as to the circumstances, manner and time at which respondent gained knowledge of the Herlihy decision.

The Referee sustained the charge of misconduct and we find that the record fully supports the conclusions of the Referee for the reasons that follow. While respondent admits the factual allegations contained in the specifications, he argues that his failure to inform Judge Gitelman of the Herlihy determination* or to include it in the record sent to the Attorney-General, the basis for specifications 1 and 3, was based upon his legal judgment that since the Herlihy determination was nonfinal, it was not a part of the record and thus was not required to be disseminated to Judge Gitelman or included in the record prepared for the Attorney-General. Respondent's argument centers upon State Administrative Procedure Act § 302 (1) (f) which, at the time Judge Gitelman was assigned the case, stated that an administrative record included "any decision, determination, opinion, order or report filed". Respondent contends that, since this statute was amended effective June 21, 1985 to include in the definition of record "any findings of fact, conclusions of law or other recommendations made by a presiding officer", prior to that time such documents were not part of an administrative record, and he characterizes the Herlihy determination as such a document.

We reject respondent's interpretation of State Administrative Procedure Act § 302 (1) (f) and its subsequent amendment. Prior to its amendment, the statute required any "report" to be included in an administrative record. Other provisions in the State Administrative Procedure Act describing an agency's final action do not use the word report (see, e.g., State Administrative Procedure Act § 302 [2]; § 307), thus indicating that "report" in State Administrative Procedure Act § 302 (1) (f) refers to nonfinal dispositions such as the Herlihy determination. The subsequent amendment of the statute merely amplified this legislative intent (see, Mayblum v Chu, 67 NY2d 1008).

We also agree with the Referee's rejection of respondent's argument that he was exercising good-faith legal judgment in

---

* While referred to in the pleadings as either a recommended decision or a recommendation, the regulations of the Department of Audit and Control classify such an adjudiction as a determination (see, 2 NYCRR 317.4 [c]). Consequently, we will use the same terminology.

concluding that the Herlihy determination was not part of the record. Respondent testified that he felt the Herlihy determination was wrong and would cause administrative difficulties if implemented. He also stated that there was a reluctance to actually overrule the determination, and that he therefore retained the determination and acted neither to implement nor to reject it; upon Justice Herlihy's death, he saw reassignment to another Hearing Officer as an "expedient" or "easy" solution. Respondent further stated that the procedure in reviewing Hearing Officer determinations was either to accept them on behalf of the Comptroller or reject them and overrule the determination. In no other case had this procedure not been followed. In any event, respondent's argument as to his interpretation of State Administrative Procedure Act former § 302 (1) (f) is unavailing. At issue in specification 1 is whether Judge Gitelman should have been informed of the Herlihy determination, an intra-agency matter, not whether it was a part of the "record". Justice Herlihy's death did not invalidate his determination (see, CPLR 9002). Thus, it had to be given effect by Judge Gitelman pursuant to CPLR 9002. In addition, as to specification 3, by the time the record was prepared for the Attorney-General, State Administrative Procedure Act § 302 (1) (f) had been amended so that the Herlihy determination clearly had to be included in the record, even under respondent's analysis, as a "recommendation made by a presiding officer".

As to specification 2, while respondent testified he did not remember reading the statement in Judge Gitelman's determination to the effect that Justice Herlihy had died without having rendered a decision, the Referee properly concluded that respondent, in preparing the findings of fact and conclusions of law for Judge Gitelman's signature, failed to inform Judge Gitelman of the inaccurate statement in his determination. Finally, as to specification 4, while respondent alleges that in making the statement in his letter that the Herlihy determination "had not been properly filed", he meant that the determination had not been made a part of the hearing record, the Referee correctly found that the letter was "false and misleading and intended by respondent to extricate him from a criticizable position". The plain meaning of the language at issue is that the Herlihy determination had been overlooked or misplaced, which was not the case.

In determining an appropriate sanction, we note that respondent's misconduct, while serious, did not result in any substantial injury to the public or to any individual. In this

regard, we note that the benefits payable as a result of decedent's death were paid by the Employees' Retirement System, pursuant to order of the Supreme Court, Erie County, jointly to the attorneys for decedent's present and former wives for ultimate distribution in an equitable action undertaken between those parties in Supreme Court. We further note that, except for this incident, respondent's record as an attorney is unblemished and that numerous affidavits from present and former superiors and colleagues attest to respondent's integrity and honesty. Under the circumstances, it appears that respondent's actions in this matter are an aberration from his otherwise exemplary conduct. Accordingly, we have concluded that the ends of justice, including the interests of the public and the legal profession, will be adequately served in this matter by a public censure.

Respondent censured. Mahoney, P. J., Kane, Yesawich, Jr., Levine and Mercure, JJ., concur.